UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| VIRGINIA SNEED WILSON | CIVIL ACTION NO. 24-237 |
| VERSUS | JUDGE EDWARDS |
| CARRINGTON MORTGAGE SERVICES L L C | MAG. JUDGE HORNSBY |

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss filed by Defendant, Carrington Mortgage Services LLC ("Defendant" or "Carrington").[1] Plaintiff Virginia Sneed Wilson ("Plaintiff") filed an opposition in response,[2] and Defendant replied.[3] For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**.

### I.   BACKGROUND

This matter arises from a foreclosure dispute involving Plaintiff, Virginia Sneed Wilson, and Defendant, Carrington Mortgage Services LLC. On or about December 17, 2014, Home Federal Bank extended a mortgage loan to Virginia Sneed Wilson and Bruce W. Wilson in the original principal amount of $264,285.00 ("Loan") secured by a mortgage ("Mortgage") recorded against the property commonly known as 2127 Forest Hills Blvd., Haughton, LA 71037 ("Property").[4] Bruce W. Wilson died in January 2019 and Plaintiff was placed in sole possession of the Property.[5] On or

---

[1] R. Doc. 7.
[2] R. Doc. 16.
[3] R. Doc. 17.
[4] R. Doc. 1-1 at 3-4; R. Doc. 7-1 at 6.
[5] R. Doc. 7-2 at 51.

about July 27, 2023, a petition for executory process was filed in the 26th Judicial District Court for the Parish of Bossier, Louisiana.[6] After some amendments to the petition, a writ of seizure and sale was issued on October 25, 2023, and served on Plaintiff by the Sheriff of Bossier Parish on November 3, 2023.[7] The sheriff's sale of the property was set for January 24, 2024 but was stayed by the 26th Judicial District Court.[8]

Plaintiff filed the present petition in the 26th Judicial District Court of Bossier Parish Louisiana on January 19, 2024, asserting a range of claims related to the servicing of her mortgage, alleged violations of federal and state laws, and constitutional rights.[9] The claims include allegations under the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA") and Regulation X, and 42 U.S.C. § 1983, as well as claims of negligence and other torts.[10] Defendant then removed the case to this Court.[11] Then Defendant filed the instant Motion to Dismiss.[12] Defendant asserts that Plaintiff's action should be dismissed for failing to meet the pleading standards of Rule 8(a), being time-barred, and lacking factual and legal sufficiency.

II. **LEGAL STANDARD**

---

[6] R. Doc. 7-2.
[7] R. Doc. 7-3, 7-4.
[8] R. Doc. 7-5, 7-6.
[9] R. Doc. 1-1.
[10] *Id.*
[11] R. Doc. 1.
[12] R. Doc. 7.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.[13] The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.[14] The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face."[15] When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief.[16] Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.[17]

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto.[18] "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[19] Indeed, any documents attached to the briefing on a motion to dismiss may be considered by the Court if the documents are sufficiently referenced in the complaint and no party questions their authenticity.[20]

---

[13] *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).
[14] *Id.*
[15] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[16] *Id.* at 679.
[17] *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).
[18] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).
[19] *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Kane Enters. v. MacGregor (USA), Inc.,* 322 F.3d 371, 374 (5th Cir. 2003).
[20] *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008).

### III. LAW & ANALYSIS

Defendant filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[21] Defendant argues (1) that many of Plaintiff's claims are barred by the applicable statutes of limitations or prescriptive periods; (2) that Plaintiff's constitutional claims fail because Carrington is not a state actor; (3) that Plaintiff's claims under the Real Estate Settlement Procedures Act ("RESPA") and Regulation X fail to state a plausible claim for relief; (4) that Plaintiff's FDCPA claims are legally and factually deficient; and (5) that Plaintiff's remaining claims are inadequately pleaded and should also be dismissed. The Court addresses each of these issues in turn.

#### A. Prescription

Defendant Carrington argues that many of Plaintiff's claims are time-barred under the applicable statutes of limitations. Plaintiff filed her petition on January 19, 2024.[22] Defendant asserts that the one-year prescriptive period for tort claims in Louisiana and the one-year limitations period under the FDCPA preclude Plaintiff's claims based on conduct that occurred prior to January 19, 2023.[23] Plaintiff, in response, argues that her claims are not prescribed because the alleged violations are tied to the foreclosure action filed on July 27, 2023, which occurred within one year of the date of filing her petition.[24]

---

[21] R. Doc. 7 at 1.
[22] R. Doc. 1-1
[23] R. Doc. 7-1 at 9-10.
[24] R. Doc. 16 at 5-6.

Under Louisiana law, delictual actions are subject to a one-year prescriptive period.[25] This period begins to run from the date the injury or damage is sustained.[26] The FDCPA states that an FDCPA action "may be brought ... within one year from the date on which the violation occurs."[27] The U.S. Supreme Court in *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019) held that "absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered."

Regarding the FDCPA claims, Plaintiff is asserting that all the various violations of her rights under the FDCPA should receive a prescriptive period of one year from the foreclosure action filed on July 27, 2023. However, this Court has adopted the position that each individual FDCPA violation constitutes a separate and distinct action which requires its own statute of limitations analysis.[28] Plaintiff's petition does not provide dates for each of the alleged violations of the FDCPA. Plaintiff's response states that her claims are "based upon actions taken by Defendants [*sic*] beginning in 2022 and an injury that occurred on July 27, 2023."[29] Accordingly, any claim of a violation of the FDCPA based on acts or omissions that occurred prior to January 19, 2023, is time barred.[30]

---

[25] La. Civ. Code art. 3492.
[26] *Id.*
[27] 15 U.S.C. § 1692k(d).
[28] *James v. MRC Receivables Corp.*, No. CV 16-0448, 2018 WL 3213147 (W.D. La. June 28, 2018) ("[f]or statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis.") (internal quotations omitted).
[29] R. Doc. 16 at 5.
[30] R. Doc. 1-1 at ¶ 27[n]-[o].

As to the Louisiana tort claims, the petition lists various tort theories without providing facts or dates to make them cognizable.[31] Claims regarding these wrongful acts or omissions which occurred prior to January 19, 2023, are similarly time-barred.

### B. Constitutional Claims

In their Motion, Defendant argues that Plaintiff's claims for constitutional violations, brought under 42 U.S.C. § 1983 fail because Plaintiff does not and cannot establish that Carrington, a private entity, acted under the color of state law.[32] Defendant contends that § 1983 claims require a showing that the alleged deprivation of rights was committed by a state actor, and Plaintiff has not alleged facts to support such a finding.[33] In response, Plaintiff asserts that Carrington's actions in pursuing foreclosure amount to a deprivation of her constitutional rights; however, Plaintiff does not rebut Defendant's argument regarding the absence of state action.[34]

To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) a violation of a constitutional right and (2) that the violation was committed by a person acting under the color of state law.[35] The "color of state law" requirement is satisfied only when the defendant's actions are fairly attributable to the state.[36] A private party can be held to be a state actor under only three circumstances, (1) where there is a

---

[31] R. Doc. 1-1 ¶ 27[a], [c], [d], [f] (all these theories that sound in tort which are premised on acts or omissions that occurred prior to January 19, 2023 are prescribed).
[32] R. Doc. 7-1 at 10-12.
[33] *Id.*
[34] R. Doc. 16 at 6.
[35] *See West v. Atkins*, 487 U.S. 42, 48 (1988).
[36] *See Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law") (internal quotations omitted).

sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state.[37]

Plaintiff has not alleged any facts to support a finding that Carrington had a close nexus between itself and the state, exercised powers that were traditionally the exclusive prerogative of the state, or the state exercised coercive power over Carrington. Therefore, Plaintiff has failed to state a claim under § 1983 against Defendant. All claims based on § 1983 for constitutional violations are dismissed with prejudice.

### C. RESPA & Regulation X

In her Petition, Plaintiff alleges that she submitted two applications for loss mitigation protections and that Defendant denied the loss mitigation requests.[38] Plaintiff also alleges that Defendant failed to respond to plaintiff's qualified written requests (QWRs).[39] Plaintiff claims that Defendant's actions, including their denial of her applications and failure to respond adequately, breached Defendant's obligations under RESPA and Regulation X.[40]

---

[37] *Blum v. Yaretsky*, 457 U.S. 991 (1981).
[38] R. Doc. 1-1 at 2.
[39] *Id.* at 5.
[40] *Id.*

In their Motion to Dismiss, Defendant argues that Plaintiff's allegations fail to establish a claim under RESPA or Regulation X.[41] They assert that a denial of a loss mitigation application alone does not constitute a violation.[42] Defendant outlines the duties of a servicer upon receipt of a complete loss mitigation application and contend that the factual allegations in the Petition demonstrate that the Defendant has complied with all their obligations under RESPA and Regulation X as it relates to the Plaintiff's loss mitigation application.[43] Additionally, Defendant contends that Plaintiff's allegations are conclusory and lack the requisite factual detail, failing to meet the pleading standards to survive a motion to dismiss under 12(b)(6).[44] Finally, Defendant contends that Plaintiff has not demonstrated actual damages caused by their alleged violations, a necessary element of a RESPA claim.[45]

In her response, Plaintiff argues that "Defendant failed to respond to her qualified written requests as required by 12 U.S.C. §2605(e)."[46] Then Plaintiff proceeds to assert that because Defendant has violated §2605(e) that Defendant is liable under §2605(f). Plaintiff then concludes by saying that because her petition states that Ms. Wilson submitted two applications for lost mitigation protections and "that Defendant failed to properly respond after receipt of qualified written requests..." that the Petition pleads facts sufficient to establish the existence of a plausible claim under 12 U.S.C. §2605 and Regulation X.

---

[41] R. Doc. 7-1 at 12-16.
[42] *Id.* at 15.
[43] *Id.* at 14-15.
[44] *Id.* at 12.
[45] *Id.* at 15.
[46] R. Doc. 16 at 6.

In their reply, Defendant reiterates their prior argument that the Petition does not contain any facts to that effect, and Plaintiff merely cites the provisions of Regulation X and RESPA in a conclusory fashion.[47] Additionally, Defendant contends that Plaintiff does not attempt to state the existence of alleged damages caused by the purported violation of RESPA and Regulation X, and that without purported damages, the Plaintiff's claim is not cognizable.[48]

RESPA, and its implementing regulation, Regulation X, impose consumer disclosure obligations on loan servicers.[49] RESPA Section 6(f) (as implemented by Regulation X) protects consumers in the context of several substantive aspects of the mortgage process, including loss mitigation procedures for residential mortgage servicers.[50] Loss mitigation rules and procedures are outlined in 12 C.F.R. § 1024.41 of Regulation X. Relevantly, § 1024.41 provides:

> [I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:
>
> (i)   Evaluate the borrower for all loss mitigation options available to the borrower; and
> (ii)  Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program … and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal…

---

[47] R. Doc. 17 at 4.
[48] *Id.* at 5.
[49] 12 U.S.C. § 2601; 12 C.F.R. § 1024.
[50] 12 C.F.R. § 1024.41.

Also, Regulation X's loss mitigation requirements do not impose a duty on a mortgage servicer to provide borrowers with specific loss mitigation options.[51]

Additionally, in order to recover under RESPA for any purported violation, the Fifth Circuit has held that the plaintiff "must show that actual damages resulted from a RESPA violation."[52] The failure to plead actual damages or facts demonstrating a reasonable inference of actual damages as result of an alleged RESPA violation is cause for dismissal with prejudice.[53]

Even taking all of Plaintiff's factual allegations as true, Plaintiff's claims fail to meet the pleading standards required under Rule 12(b)(6). Plaintiff alleges that Defendant "failed to properly respond" to her loss mitigation applications and QWRs, but she fails to provide any factual detail regarding how these responses were deficient or failed to comply with RESPA and Regulation X.[54] Merely asserting that Defendant's actions violated these statutes is conclusory and insufficient. Plaintiff does not state facts in her/ Petition that would demonstrate how Plaintiff violated the loss mitigation procedures set out by 12 C.F.R. § 1024.41. Simply stating that the Petition says the Defendant "failed to respond" to QWRs without any facts to support how they achieved such a violation does not constitute "well-pleaded" factual allegations that can establish a plausible right to relief.[55] Furthermore, even if such

---

[51] 12 C.F.R. § 1024.41(a) ("Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option.")
[52] *Whittier v. Ocwen Loan Servicing, LLC*, 594 Fed.Appx. 833, 836 (5th Cir. 2014).
[53] *See e.g.*, *Jackson v. Standard Mortg. Corp.*, Case No. 18-cv-00927, 2021 WL 1342971, *7-8 (W.D. La. Apr. 9, 2021) ("Proving actual damages is a necessary element to recovering under a RESPA claim").
[54] R. Doc. 16 at 7.
[55] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

a statement constituted a well-pleaded factual allegation, Plaintiff's Petition is still deficient as it does not allege the existence of actual damages the Plaintiff sustained as a result of the alleged RESPA violations. For the foregoing reasons, Plaintiff's claims under RESPA and Regulation X are dismissed.

### D. FDCPA

Plaintiff alleges that Defendant violated the FDCPA by engaging in deceptive and unfair practices during the servicing of her mortgage.[56] Specifically, Plaintiff claims that Defendant's conduct in the loan servicing process and their alleged failure to adequately respond to her inquiries constitutes a violation of the FDCPA's prohibitions for false, deceptive, or misleading representations and unfair practices.[57]

Defendant argues that Plaintiff's FDCPA claims fail to state a claim upon which relief can be granted as Defendant is not a "debt collector" as defined by the FDCPA.[58] In her response, Plaintiff argues that because her mortgage was placed in forbearance before the Mortgage was assigned to Defendant, that Defendant was a debt collector under the FDCPA.[59]

Defendant's reply counters by stating the Mortgage's assignment "is not coterminous with the assignment of the debt (i.e, the Loan)."[60] Defendant asserts that rights and ownership of a loan often are separate from the rights involved in a security device, such as a mortgage.[61] Defendant then argues that the assignment of

---

[56] R. Doc. 1-1 at ¶ 27 [n], [o].
[57] *Id.*
[58] R. Doc. 7-1 at 16.
[59] R. Doc. 16 at 7-8.
[60] R. Doc. 17 at 5.
[61] *Id.*

the Mortgage to Carrington after default is not evidence that the Loan itself was assigned to Carrington at that time as well.[62]

A claim under the FDCPA requires the plaintiff to show that "(1) plaintiff has been the object of collection activity arising from consumer debt; (2) defendant is a debt collector as defined by the FDCPA; and (3) defendant has engaged in an act or omission prohibited by the FDCPA."[63]

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[64] A debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person."[65]

The Court declines to conduct an inquiry into whether Defendant qualifies as a "debt collector" under the FDCPA because Plaintiff's claims fail on the third prong of the FDCPA requirements. Plaintiff has not alleged sufficient facts to show that Defendant violated a provision of the FDCPA.

While Plaintiff asserts that Defendant engaged in deceptive and unfair practices, these allegations are conclusory and lack the necessary factual specificity

---

[62] *Id.* at 6.
[63] *McCarthy v. Receivable Recovery Servs. LLC*, 2021 WL 5750876, *3 (W.D. La. 2021) (internal quotations omitted).
[64] 15 USCS § 1692a(6).
[65] 15 U.S.C. § 1692(a)(6)(F).

to support an FDCPA claim. Plaintiff does not identify specific communications or actions by Defendant that could be construed as false, deceptive, or misleading under the FDCPA. Nor does Plaintiff allege particular facts showing how Defendant's conduct constituted unfair practices prohibited by the statute.

Without factual allegations detailing the nature of the purported violations, Plaintiff's claims fail to meet the Rule 12(b)(6) pleading standard. Mere conclusory statements unsupported by factual content are insufficient to state a plausible claim for relief.

Plaintiff's FDCPA claims fail to allege sufficient facts to meet the pleading standard required under Rule 12(b)(6). Accordingly, these claims are dismissed.

### E. Remaining Claims (Fraud, Injunction, Miscellaneous Contract and Tort Claims).

Plaintiff's remaining claims allege that Defendant engaged in wrongful conduct related to the servicing of her mortgage and the handling of her loss mitigation applications. These claims include allegations of fraud, requests for injunctive relief, and miscellaneous contract and tort claims.[66] However, Plaintiff's petition provides no factual allegations to support these claims, relying instead on generalized statements that Defendant violated her rights and engaged in improper conduct.

The remaining claims in Plaintiff's petition fail to meet the Rule 12(b)(6) standard. Plaintiff does not specify the nature of these claims or provide any factual detail regarding the alleged conduct by Defendant. Without identifying the legal basis

---

[66] *See e.g.*, R. Doc. 1-1 at ¶ 27 (a), (c), (d).

for these claims or providing supporting factual allegations, Plaintiff's petition does not allow the Court to evaluate the plausibility of her claims.

Specifically, the fraud allegations lack the particularity required by Rule 9(b). Plaintiff does not identify any specific misrepresentation made by Defendant, the individuals involved, the timing or location of the alleged misrepresentations, or how such statements were false or misleading. Without any facts to support these claims, Plaintiff's fraud claims cannot proceed.

On her request for injunctive relief, Plaintiff's does not demonstrate a basis for the Court to enjoin the seizure and sale of the property. Louisiana law allows for the mortgagor to obtain an injunction of the seizure and sale of property "when the debt secured by the security interest, mortgage, or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed."[67] Plaintiff's petition does not assert that the debt from the Loan has been extinguished or is legally unenforceable nor does it assert that the procedure for executory process was not followed. Accordingly, Plaintiff has not stated sufficient facts such that it is plausible that she has a basis for injunction.

For the miscellaneous contract and tort claims that are not already barred by prescription, Plaintiff fails to identify the contractual provisions allegedly breached or any specific duties owed and violated by Defendant. The petition lacks factual content linking Defendant's conduct to Plaintiff's alleged damages. General

---

[67] La. Code Civ. Proc. art. 2751.

assertions that Defendant engaged in wrongful conduct, without more, do not satisfy the pleading requirements.

Similarly, Plaintiff's remaining claims, including allegations of fraud, requests for injunctive relief, and miscellaneous contract and tort claims, are dismissed under Rule 12(b)(6) for being conclusory and devoid of factual support.

## IV. CONCLUSION

For the foregoing reasons,

Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's claims against Carrington Mortgage Services LLC are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** this 15th day of January, 2025.

*[Signature]*
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**